IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-590-F

| | |
|---|---|
| SHARLENE Y. ROBINSON, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> v. ) <br> ) <br> DEUTSCHE BANK NATIONAL TRUST ) <br> COMPANY AS TRUSTEE FOR ) <br> ARGENT SECURITIES TRUST, ASSET- ) <br> BACKED PASS-THROUGH ) <br> CERTIFICATE SERIES 2006-M1 and ) <br> HOMEWARD RESIDENTIAL INC. ) <br> F/K/A AMERICAN HOME MORTGAGE ) <br> SERVICING, INC., ) <br> ) <br> ) <br> Defendants. ) | **MEMORANDUM AND ORDER** |

This matter is before the court on Plaintiff Sharlene Robinson's Motion for Preliminary Injunction, found within Docket Entry 1-1. Defendants Deutsche Bank National Trust Company as Trustee for Argent Securities Trust, Asset-Backed Pass-Through Certificates Series 2006-M1 ("Deutsche Bank") and Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc. ("Homeward") (collectively, "Defendants") oppose the motion. [DE-16.] On April 9, 2013, the court entered an order that, among other things, required additional briefing on the matter. [DE-20.] Plaintiff and Defendants have each submitted a supplemental brief. [DE-21; DE-24.] Accordingly, the motion is ready for disposition. For the reasons stated below, the court will DENY the Motion for Preliminary Injunction.

## FACTS

The court accepts the following facts as true for purposes of the instant motion. On May 23, 2006, Plaintiff and her then-husband entered into a loan transaction secured by the subject property (their sixth refinancing), and signed a Note with a principal balance of $116,000.00, made payable to Argent Mortgage Company ("Argent"). The Note was secured by a Deed of Trust. Plaintiff later separated from her husband but continued to live on the property, and in 2011 she and her ex-husband executed a deed to the property transferring ownership to Plaintiff alone.

Plaintiff had difficulty making the mortgage payments, and she applied for a loan modification from her loan servicer, Defendant Homeward, in late 2010 or early 2011. In May of 2011, Defendant Homeward offered Plaintiff a loan modification pursuant to the federal Home Affordable Modification Program ("HAMP"). Plaintiff alleges in her Complaint the 2011 loan modification offered to her did not comply with HAMP's affordability requirements, which she contends requires an offered modification to reduce the monthly payment to 31% of a borrower's gross income. Rather, she contends the 2011 loan modification offered by Defendant Homeward required monthly payments amounting to 45% of her gross monthly income.

Plaintiff was not able to pay her monthly mortgage payments under the 2011 modification, and she contacted Defendant Homeward in or around March of 2012 to request another loan modification. Plaintiff alleges in her Complaint that Defendant Homeward incorrectly informed her that she could not apply for another loan modification until May of 2012. After contacting Defendant Homeward on May 4, 2012, Plaintiff received a loan modification packet informing her she had 30 days to submit her paperwork for a loan modification to Defendant Homeward. Plaintiff submitted her application on May 30, 2012.

Plaintiff alleges in her Complaint that Defendants commenced foreclosure proceedings against the property on February 29, 2012. A foreclosure hearing took place on May 7, 2012, but Plaintiff chose not to attend, believing that the only options that would enable her to keep the property were a loan modification or a Chapter 13 bankruptcy. Plaintiff contacted a bankruptcy attorney in or around March of 2012, and she planned to file a Chapter 13 bankruptcy to save the property if she was not able to receive consideration for a loan modification. At the May 7, 2012, foreclosure hearing, the Assistant Clerk of Superior Court issued an order allowing the foreclosure sale.

Plaintiff alleges in her Complaint that Defendant Homeward advised her on May 29, 2012, that the foreclosure sale of the property was scheduled to take place on June 6, 2012, and that she needed to submit the loan modification documentation before that date to keep the sale from taking place. Plaintiff thereafter contacted Defendant Homeward on June 4, 2012, to confirm that it had received her paperwork. During the June 4, 2012, phone call, Defendant Homeward informed her that it had received her paperwork but required additional documents. Additionally, an employee or agent of Defendant Homeward told Plaintiff that no foreclosure sale was scheduled and no sale of the property would take place pending consideration of her application for a loan modification. Plaintiff faxed additional documents to Defendant Homeward on June 4, 2012. She also cancelled the appointment with her Chapter 13 bankruptcy attorney because she believed, based on Defendant Homeward's representations, that it would consider her application for a loan modification before proceeding to sell the property.

Plaintiff alleges in her Complaint that Defendant Homeward did not stop the foreclosure sale, and the Substitute Trustee conducted the sale on June 6, 2012. Defendant Deutsche Bank purchased

3

the property for $75,000. The deed to the property was transferred to Deutsche Bank on June 20, 2012. On that same date, Plaintiff first became aware that the property had been sold when she received a flyer from a real estate agent informing her the property had been foreclosed upon and offering her "cash for keys," an offer of payment of a sum of money in exchange for signing an agreement to move out of the property immediately.

Plaintiff argues that, pursuant to Defendants' representations regarding the status of a foreclosure sale, she forewent her equitable right of redemption of the property through a Chapter 13 bankruptcy plan. Plaintiff seeks entry of the property into a constructive trust, naming her as the beneficiary of the trust, and money damages.

Plaintiff was scheduled to be evicted from the property on August 13, 2012, but she filed the instant action on August 8, 2012. Prior to the removal of the case to this court, State Superior Court Judge G.W. Abernathy issued a Temporary Restraining Order enjoining the eviction. The parties have since agreed to keep the terms of the Temporary Restraining Order in place pending this court's ruling on Plaintiff's Motion for Preliminary Injunction.

On April 9, 2013, the court entered an order dismissing Plaintiff's claim for constructive fraud, but finding that Plaintiff adequately stated claims of breach of covenant of good faith and fair dealing, negligence, and unfair and deceptive trade practices.

## ANALYSIS

The Complaint in this case seeks money damages and equitable relief in the form of entry of the property into a constructive trust that names Plaintiff as the beneficiary. To support her claim for equitable relief, Plaintiff alleges several wrongful acts of Defendants that she argues caused her to cancel an appointment with an attorney that would have resulted in a Chapter 13 bankruptcy filing,

thereby cutting off her right of redemption. Plaintiff argues that Defendants have been unjustly enriched because their wrongful actions enabled them to acquire the property for substantially less than its value, and that entry of a constructive trust is a proper remedy in this case because ownership of the property stems from wrongful acts. Finally, Plaintiff argues in her motion that injunctive relief is necessary to preserve the status quo until Plaintiff's claims are adjudicated and that she would suffer irreparable injury if she is ejected from the property because she has insufficient means to obtain alternative housing.

Defendants oppose entry of a preliminary injunction, arguing that Plaintiff fails to make a sufficient showing of a likelihood of success on the merits because: (1) she fails to demonstrate that entry of the property into a constructive trust is an appropriate remedy in this case; (2) she fails to demonstrate that Defendants committed fraud, breach of duty, or other wrongdoing such that equitable relief is warranted in this case; (3) she fails to demonstrate that bankruptcy would have prevented the ultimate foreclosure on the property; and (4) she fails to demonstrate that Defendants were unjustly enriched such that equitable relief is warranted in this case.

A preliminary injunction is an extraordinary interlocutory remedy "involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quotation omitted). "General equitable authority does not authorize prejudgment injunctions in actions solely at law," but the court's equitable powers "to issue a preliminary injunction are not defeated when money damages are claimed along with a constructive trust." *In re S. E. Materials, Inc.*, B-09-52606 C-7W, 2012 WL 899315, at *2 (Bankr. M.D.N.C. Mar. 15, 2012) (citation omitted). Nevertheless, even where equitable relief is sought, a preliminary injunction is "never awarded as of right." *Munaf v. Geren,*

553 U.S. 674, 690 (2008) (citation omitted). Rather, a court may issue a preliminary injunction in its discretion and only if the moving party establishes the following factors: (1) she is likely to succeed on the merits, which must be made by a clear showing; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009); *see also Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012) ("[A] preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (quotation omitted)).

Preliminary injunctions such as the one now before the court "aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citation omitted). The term "status quo" refers to "the last uncontested status between the parties which preceded the controversy." *Id.* at 320 (quotation omitted). As such, the status quo in this case is a situation in which Plaintiff owned the property and was making periodic payments pursuant to the terms of the Note and Deed of Trust. Plaintiff argues that Defendants' actions prevented her from filing for bankruptcy; however, even if she had filed a claim for bankruptcy, she would have saved the property only if she had the "ability to pay [her] ongoing living expenses, mortgage payments, and a plan payment that includes a mortgage cure payment and attorney's fees." *In re Burton*, 442 B.R. 421, 451 (Bankr. W.D.N.C. 2009) (stating that "[m]ost foreclosure borrowers lack this financial ability and, thus, are not able to avert foreclosure even with bankruptcy help"). In other words, bankruptcy would not have altered the status quo in that she would still be required to make periodic payments to maintain possession of the property.

6

Aside from maintaining the status quo, preliminary injunctions are intended to prevent irreparable harm while a lawsuit remains pending. Due to the extraordinary nature of a preliminary injunction, courts show a "reluctance to award preliminary injunctions where the harm at issue can be remedied by an award of money damages." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). In this regard, the Supreme Court has directed that the harm necessary to justify issuance of a preliminary injunction be irreparable. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quotation omitted). Indeed, a loss compensatable by money damages at judgment may support entry of a preliminary injunction, but such "situations are quite narrow, reflecting instances where the harm suffered by the plaintiff from denying the injunction is especially high in comparison to the harm suffered by the defendant from granting it." *Hughes Network Sys.*, 17 F.3d at 694.

Subsequent to their alleged wrongful acts, Defendants obtained the property at a foreclosure sale. Under North Carolina law, the rights of the parties to a foreclosure sale become fixed if an upset bid is not filed within ten days after a sale of real estate. N.C. Gen. Stat. § 45-21.29A; *see Morroni v. Maitin*, 164 N.C. App. 598, 596 S.E.2d 473, 2004 WL 1191669, at *2 (2004). Within that window, the owner may file a separate action to enjoin the foreclosure. N.C. Gen Stat. § 45-21.34; *see Morroni*, 164 N.C. App. 598, 596 S.E.2d 473, 2004 WL 1191669, at *2. However, "[o]nce the rights to a foreclosure sale are fixed, a court cannot issue a prohibitory injunction, as 'a court cannot restrain the doing of an act which already has been consummated.'" *Morroni*, 164 N.C.

7

App. 598, 596 S.E.2d 473, 2004 WL 1191669, at *2 (quoting *Roberts v. Madison County Realtors Ass'n, Inc.*, 344 N.C. 394, 401-02, 474 S.E.2d 783, 788 (1996)). "When a mortgage or deed of trust is wrongfully foreclosed, the injured mortgagor who elects not to ratify the sale may either (1) treat the sale as a nullity and sue to set it aside, or (2) permit the sale to stand and sue the mortgagee to recover damages suffered as a result of the wrongful foreclosure." *Chandler v. Cleveland Sav. & Loan Ass'n*, 24 N.C. App. 455, 458, 211 S.E.2d 484, 487 (1975) (citations omitted). The Complaint does not contain any allegation that the rights of the foreclosure sale did not fix, and Plaintiff in this case does not appear to dispute that legal title to the property belongs to Defendants. Therefore, it appears that Plaintiff is pursuing the second option of suing to recover damages as a result of the alleged wrongful foreclosure.

In addition to money damages, Plaintiff seeks equitable relief in the form of entry of the property into a constructive trust that names Plaintiff as the beneficiary. A constructive trust "is a tool of equity to prevent unjust enrichment," and "is granted to provide just compensation for the wrong, not to impose a penalty." *United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 498 (4th Cir. 1999) (quotations omitted). Through establishment of a constructive trust, a court "exercises its equitable powers to fashion remedies." *Patterson v. Strickland*, 155 N.C. App. 776, 574 S.E.2d 715, 2003 WL 138923, at *5 (2003). "Determining the type of conduct that will give rise to a constructive trust or other equitable interest is a matter that is controlled by state law." *Asheboro Precision Plastics, Inc. v. Van Dorn Demag Corp.*, No. 03-11319C-7G, 04-2043, 2005 WL 1287743, at *9 (Bankr. M.D.N.C. Mar. 1, 2005). Under North Carolina law:

> A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance

> making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. A constructive trust is a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing. There is a common, indispensable element in the many types of situations out of which a constructive trust is deemed to arise. This common element is some fraud, breach of duty or other wrongdoing by the holder of the property.

*Bissette v. Harrod*, 738 S.E.2d 792, 800 (N.C. Ct. App. 2013) (quotation and alterations omitted). Generally, a "constructive trust will not be imposed if there is no fiduciary duty between the parties." *Lawyers Paralegal Training Progams, LLC v. Guilford Coll.*, 737 S.E.2d 191, 2013 WL 432646, at *5 (N.C. Ct. App. 2013) (citing *Sec. Nat. Bank of Greensboro v. Educators Mut. Life Ins. Co.*, 265 N.C. 86, 95, 143 S.E.2d 270, 276 (1965) (stating that "[a] constructive trust does not arise where there is no fiduciary relationship and there is an adequate remedy at law")). Nevertheless, a fiduciary relationship is not absolutely required, and other circumstances may exist which allow entry of a constructive trust against one who holds legal title to property but, in equity and good conscience, should not. *See Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 530-31, 723 S.E.2d 744, 752 (2012) ("[A] fiduciary relationship, while generally the basis for constructive trust claims, is not strictly required. In the absence of such a relationship, [a plaintiff] faces the difficult task of proving some other circumstance making it inequitable for [the defendant] to possess the [property]. We have also used the phrase, any other unconscientious manner, in describing situations in which a constructive trust may be imposed without a fiduciary relationship." (quotations omitted)).

As noted above, the status quo in this case included Plaintiff's periodic payments to Defendants (regardless of whether she filed for bankruptcy). This is not the current position of the parties, and returning to this arrangement would not occur through entry of a constructive trust. That

is, a constructive trust would not return Plaintiff to the situation in which she found herself, but rather would enable her to maintain indefinite use of the property without having to comply with the requirements of the Note and Deed of Trust she signed or return the money owed to Defendants for the loan made to Plaintiff. This would result in an inequitable windfall at Defendants' expense. Furthermore, Defendants' alleged wrongful actions and subsequent unjust enrichment, if demonstrated, have a specific value and therefore the resulting damage to Plaintiff can be cured through a monetary award. Such findings make entry of the property into a constructive trust an inappropriate remedy, and Plaintiff therefore fails to make a clear showing of likelihood of success on the merits of this claim.

Plaintiff also states that she will suffer irreparable injury if she is ejected from the property because she does not have sufficient means to acquire alternative housing. The court is certainly sympathetic to Plaintiff's situation. However, the Temporary Restraining Order preventing her eviction from the property has been in place for nearly nine months, which is a sufficient amount of time for Plaintiff to have secured alternative housing arrangements. Accordingly, eviction at this time will not cause the kind of acute harm that can be considered "irreparable."

Finally, with regard to a preliminary injunction, the court finds that the balance of equities favor Defendants. That is, given that the court finds a constructive trust to be an inappropriate remedy in this case, it would be inequitable to continue to enjoin Defendants from possession of property that belongs to them. The court notes that this finding should not be considered in any way a ruling on the merits of Plaintiff's claim for money damages.

## CONCLUSION

The court finds that if Plaintiff proves her case against Defendants, she may be entitled to

recover monetary damages. However, she has not made a clear showing that she is likely to succeed in receiving equitable relief at trial. Further, at this time she will not suffer irreparable harm if the Temporary Restraining Order is allowed to expire, and the equities of the case tip in Defendants' favor. Accordingly, the court will deny the Motion for Preliminary Injunction.[1] If Plaintiff is a reliable steward of the property, the court would encourage the parties to attempt to arrange a private agreement; however, no such agreement will be imposed by the court.

For the above stated reasons, it is hereby ORDERED that:

1. The Motion for Preliminary Injunction [DE-1-1] is DENIED; and

2. The Temporary Restraining Order shall EXPIRE 30 days from the date of this order.

SO ORDERED

This the 14 day of May, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

---

[1] The parties each make arguments regarding the public policy considerations. Because the first three factors favor Defendants, the court finds a discussion regarding such considerations to be unnecessary.

11